1    SNELL & WILMER L.L.P.
     Michael B. Reynolds, State Bar No. 174534
2    Jasmin N. Yang, State Bar No. 255254
     600 Anton Blvd., Suite 1400
3    Costa Mesa, CA 92626
     Phone:        (714) 427-7000
4    Facsimile:    (714) 427-7799

5

     Attorneys for Baby Trend, Inc., Debtor and
6    Debtor-in-Possession

7

8               UNITED STATES BANKRUPTCY COURT

9       CENTRAL DISTRICT OF CALIFORNIA — RIVERSIDE DIVISION

10

11   In re:                           Case No.  6:09-bk-34090-CB

12   BABY TREND, INC.., Debtor and    Chapter 11 Case
     Debtor-in-Possession.
13
                                      **FIRST AMENDED DISCLOSURE
14                                    STATEMENT DESCRIBING FIRST
                                      AMENDED CHAPTER 11 PLAN OF
15                                    REORGANIZATION PROPOSED BY
                                      BABY TREND, INC.**
16
                                      Disclosure Statement Hearing
17
                                      Date:     October 26, 2010
18                                    Time:     2:00 p.m.
                                      Ctrm:     303
19
                                      Plan Confirmation Hearing
20
                                      Date:
21                                    Time:     TO BE SET
                                      Ctrm:
22

23

24

25

26

27

28

     12095203

---

Chapter 11 Disclosure Statement

*Left margin vertical text:*

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

# I.

# INTRODUCTION

Baby Trend, Inc., is the debtor and debtor-in-possession (the "Debtor")[1] in the above-referenced bankruptcy case. On October 9, 2009, the Debtor filed a voluntary petition under the United States Bankruptcy Code (the "Code"), 11 U.S.C. Section 101, *et seq.* Chapter 11 allows a debtor and, in some circumstances, creditors and other parties-in-interest, to propose a plan of reorganization. The plan may provide for a debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Chapter 11 Plan (hereinafter, the "Plan") sent to you in the same envelope as this document. **THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.**

This is a reorganizing plan. In other words, the Debtor seeks to reorganize by using estate assets and post-petition revenues to make payments to interested parties. Some payments will be made over time. Some payments will commence on the Effective Date of the proposed Plan, which will be 60 days after the above-captioned Bankruptcy Court (hereinafter, the "Court" and/or the "Bankruptcy Court") issues an order confirming the Plan. The Debtor estimates that the Court will confirm the Plan by December 31, 2010.

## A.  **Purpose of this Disclosure Statement.**

This Disclosure Statement summarizes what is in the Plan, and provides you with certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

    (1)    **WHO CAN VOTE OR OBJECT TO THE PLAN;**

    (2)    **WHAT THE TREATMENT OF YOUR CLAIM IS (I.E., WHAT YOUR CLAIM**

---

[1] Various definitions are set forth throughout this Disclosure Statement, and additional terms are defined in Exhibit "A" hereto.

12095203

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1  WILL RECEIVE IF THE PLAN IS CONFIRMED), AND HOW THIS TREATMENT COMPARES

2  TO WHAT YOUR CLAIM WOULD RECEIVE IN A LIQUIDATION;

3      (3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE

4  BANKRUPTCY;

5      (4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR

6  NOT TO CONFIRM THE PLAN;

7      (5)    THE EFFECT OF PLAN CONFIRMATION; AND

8      (6)    WHETHER THE PLAN IS FEASIBLE.

9  This Disclosure Statement cannot tell you everything about your rights.  You

10  should consider consulting your own lawyer to obtain more specific advice on how the

11  Plan will affect you and what is the best course of action for you.

12  Be sure to read the Plan as well as the Disclosure Statement.  If there are any

13  inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will

14  govern.

15  The Code requires a Disclosure Statement to contain "adequate information"

16  concerning the Plan.  The Bankruptcy Court has approved this document as an adequate

17  Disclosure Statement, containing enough information to enable parties affected by the

18  Plan to make an informed judgment about the Plan, assuming the allegations and

19  contentions in it are accurate.  However, the Court has not yet determined their accuracy

20  and may do so at the hearing regarding confirmation of the Plan.  Any party can now

21  solicit votes for or against the Plan.

22  **B.**    **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.**

23  THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE

24  STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON

25  ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL

26  BE BINDING ON THE DEBTOR AND ALL CREDITORS AND INTEREST HOLDERS IN THIS

27  CASE.

28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

12095203

**1.      Time and Place of Confirmation Hearing.**

The hearing where the Court will determine whether or not to confirm the Plan will take place on _____, 2010, at _____.m., in Courtroom 303 of the United States Bankruptcy Court for the Central District of California, Riverside Division, located at 3420 Twelfth Street, Riverside, California 92501.

**2.      Deadline for Voting for or against the Plan.**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to:

> Michael B. Reynolds
> Snell & Wilmer L.L.P.
> 600 Anton Blvd., Suite 1400
> Costa Mesa, CA 92626
> Ph:    714-427-7000
> Fax:   714-427-7000

**YOUR BALLOT MUST BE RECEIVED BY 5:00 P.M. (PACIFIC DAYLIGHT SAVINGS TIME) ON _____, 2010, OR IT WILL NOT BE COUNTED.**

**3.      Deadline for Objecting to Plan Confirmation.**

Objections to confirmation of the Plan must be filed with the Court and served on counsel for the Debtor at the address set forth above and on the upper left-hand corner of the caption page for this Disclosure Statement by no later than 5:00 p.m. (Pacific Daylight Savings Time) on _____. The Debtor will submit a response to any such objections, along with its tabular-format ballot tally attaching a copy of all ballots submitted, and its Section 1129 declaration, no later than _____.

**4.      Identity of Person To Contact for More Information Regarding the Plan.**

Any interested party desiring further information about the Plan should contact counsel for the Debtor at the address set forth above and on the upper-left hand corner of the caption page for this Disclosure Statement.

## C. **Disclaimer**.

The financial data relied upon in formulating the Plan is based on the Debtor's own books and records. The information contained in this Disclosure Statement is provided by the following parties:

Baby Trend, Inc.
c/o Snell & Wilmer L.L.P.
600 Anton Blvd., Suite 1400
Costa Mesa, CA 92626

Edward Wu, C.P.A.
KCCW Certified Public Accountants
22632 Golden Springs Drive, Suite 230
Diamond Bar, CA 91765

Representatives of the Debtor have indicated that everything stated in the Disclosure Statement is true to the best of their knowledge. The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## II.

## BACKGROUND

### A. **Description and History of the Debtor**.

The Debtor is a corporation organized and existing under the laws of the State of California. The Debtor was founded in 1988. In 1992, Denny and Betty Tsai, the current officers and principal shareholders of the Debtor, purchased the Debtor's stock. The Debtor's business operations consist of the distribution, marketing, sale, and repair of infant and toddler related products such as strollers, car seats, high chairs, walkers, nursery items, and travel systems. The Debtor is a worldwide leader in its industry and is well-regarded and well-known for offering quality, functional products at affordable prices. The Debtor's customers include national retailers such as Wal-Mart, Target, and Toys "R" Us (Babies "R" Us). The Debtor employs approximately 50 people at its Ontario headquarters, including sales representatives, managers, office administration employees, warehouse personnel, and support staff.

The Debtor has retained possession of its property, and continues the operation and management of its business as a debtor-in-possession pursuant to Bankruptcy Code

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

12095203

Sections 1107 and 1108. No trustee, examiner, official committee of unsecured creditors or any other committee has yet been appointed in this Bankruptcy Case.

During the years 2007 through 2008, the Debtor's annual sales revenue grew from approximately $42 million to $49 million. In 2009, the Debtor's revenue grew to approximately $62 million. The Debtor's conservative estimate is that this revenue will increase in 2010 to at least $84.5 million, and will increase to at least $92.9 million in 2011.

**B.** **Principals and Affiliates of the Debtor.**

The stock of the company is owned entirely by two individuals, Denny and Betty Tsai. Denny owns 70.5% of the Debtor's capital stock and Betty owns the remaining 29.5%. Denny Tsai is the company's President and his wife serves as the Debtor's CEO and Secretary. Brad Mattarocci serves as the Debtor's General Manager.

| 1. | Shareholders | Percentage of Outstanding Shares |
|----|----|----|
| | Denny Tsai | 70.5% |
| | Betty Tsai | 29.5% |

| 2. | Officers | Title | Current Compensation |
|----|----|----|----|
| | Denny Tsai | President | $326,656 per year |
| | Betty Tsai | VP/Secretary/CEO | $124,656 per year |
| | Brad Mattarocci | General Manager | $133,038.50 per year |

The above-referenced compensation represents a slight increase from 2009 (from $317,040, $116,472 and $121,800, respectively). In addition, based on increased sales success, the Debtor anticipates providing modest year-end bonuses of approximately 10-20% of compensation. The Debtor believes this compensation to be below-market given the work the management team is performing, the results it has obtained and the size and

12095203

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    scope of the Debtor's operations.  The Debtor expects to increase officer compensation by

2    ten percent in 2011 and beyond.

3

4    **C.**    **Management of the Debtor before and after Filing Bankruptcy.**

5        Prior to filing bankruptcy, the Debtor was managed by Denny Tsai, Betty Tsai and

6    Brad Mattarocci.  This management team remains in place through the present time.  Post-

7    confirmation management is discussed below in Section III.E.2.

8

9    **D.**    **Events Leading to Chapter 11 Filing.**

10        The following is a brief summary of the circumstances that led to the filing of this

11    Chapter 11 case.

12        The Debtor began operations in 1988.  Its business consists of the distribution,

13    marketing, sale, and repair of infant and toddler-related products, such as strollers, car

14    seats, high chairs, walkers, nursery items, and travel systems.  The Debtor's 2007 and

15    2008 sales revenue were approximately $42 million and $49 million respectively.  The

16    Debtor's 2009 revenues were approximately $62 million.  The Debtor is a worldwide

17    leader in its industry and is well regarded and well known for offering quality, functional

18    products at affordable prices.  The Debtor's customers include national retailers such as

19    Target, Wal-Mart, and Toys R' Us.  The Debtor employs approximately 50 employees at

20    its Ontario facility.

21        Although the Debtor is operationally solvent, on September 30, 2009, the Orange

22    County Superior Court entered a judgment against the Debtor in the amount of

23    $8,099,772.00l (the "State Court Judgment").  Although the State Court Judgment is

24    currently the subject of appeal proceedings, the liability associated with the State Court

25    Judgment represents a significant obstacle to the Debtor's finances and its ability to

26    operate its business.  In addition, pending patent litigation in Texas (discussed below) was

27    a significant impediment to the Debtor's ability to focus on its operations.  The Debtor

28    filed its Chapter 11 petition to put a halt to various litigation and judgment enforcement

12095203                                        - 7 -

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1  proceedings, to obtain a breathing space within which to reorganize and to obtain the

2  protective umbrella of the bankruptcy code, during which the Debtor plans to complete its

3  restructuring efforts.

4

5  **E.**    **Significant Events during the Bankruptcy.**

6      **1.**    **Chronological List of Significant Post-Petition Events.**

7      The following is a chronological list of significant events that have occurred during

8  this case:

9          (a)    The Debtor filed its voluntary Chapter 11 petition on October 9,

10  2009.

11         (b)    On or about October 12, 2009, the Debtor filed its motion to use cash

12  collateral on an interim basis.  On October 14, 2009, the Debtor and its secured

13  lender DBS Bank, Ltd., entered into that certain Stipulation for the Use of Cash

14  Collateral (the "Cash Collateral Stipulation").  On October 15, 2009, the Court

15  entered an order approving the Cash Collateral Stipulation on an interim basis.  On

16  December 3, 2009, the Court entered an order granting the use of cash collateral on

17  a continuing basis.

18         (c)    On November 6, 2009, the Debtor filed its application to employ the

19  law firm of Snell & Wilmer L.L.P. as its general insolvency counsel.  That

20  application was granted by Court order entered on or about December 3, 2009.

21         (d)    On or about November 10, 2009, Albert T. Fairclough ("Fairclough")

22  and Joovy, LLC ("Joovy") filed a motion for relief from stay (the "Joovy Motion

23  for Relief from Stay") seeking to lift the automatic stay to permit them to proceed

24  against the Debtor in a patent infringement suit against the Debtor pending in the

25  United States District Court for the Northern District of Texas, Case No. 3:06-CV-

26  0616-P (the "Texas District Court Proceedings").  On December 22, 2009, this

27  Bankruptcy Court entered an order denying and granting in part the Joovy Motion

28  for Relief from Stay and ordered that the automatic stay would remain in effect

12095203                                - 8 -

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

with respect to the Debtor, but that the suit was not stayed as to the Debtor's co-defendant Target Corporation.  Significantly, the Court ordered that Baby Trend, Joovy and Fairclough would be bound by the results of the trial in the Texas District Court, and that issues determined in that case would not be relitigated in this bankruptcy.

(e)     On or about November 17, 2009, Robert Gardner ("Gardner") filed a motion for relief from stay seeking to lift the automatic stay to continue post judgment proceedings concerning the State Court Judgment including the resolution of motions related to attorneys' fees and costs.  The Debtor did not oppose that motion.  Consequently, on or about December 29, 2009, the Court entered an order granting the Gardner Motion for Relief from Stay and lifted the automatic stay for the limited purpose of resolving motions related to attorneys' fees and costs associated with the State Court Judgment and for permitting the appeal of the State Court Judgment to proceed.

(f)     On December 22, 2009, the Debtor filed its motion requesting that the Court schedule a deadline for filing proofs of claim and interests.  On or about January 22, 2010, the Court entered an order fixing the Claims Bar Date in this case as March 31, 2010.  **The Claims Bar Date is the deadline for creditors, equity interest holders whose claims or interests were not scheduled, or are scheduled as disputed, contingent or unliquidated, to file a proof of claim in this case.  Failure of such a creditor or interest holder to file a proof of claim before the Claims Bar Date may result in such creditor or interest holder not being treated as a creditor or interest holder for purposes of voting and distribution in this case.**

(g)     On or about January 8, 2010, the Debtor filed its application to employ the law firm of Horvitz & Levy LLP as its special appellate counsel to assist it in prosecuting its appeal of the State Court Judgment.  That application was granted by a Court order entered on or about March 4, 2010.

12095203

- 9 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

(h)     On or about January 11, 2010, the Debtor filed a motion to extend the exclusivity date for filing a plan of reorganization (the "First Exclusivity Motion"). On February 17, 2010, the Court granted the First Exclusivity Motion and extended the Debtor's exclusive date to file a plan of reorganization to March 25, 2010 and its date to solicit acceptances for its plan to May 24, 2010.

(i)     On or about February 10, 2010, the Debtors filed an emergency motion to obtain post-petition financing from Cathay Bank. On February 25, 2010, the Court entered an order approving the Financing Motion on an interim basis. On March 11, 2010, the Court entered an order granting the Financing Motion on a final basis.

(j)     On or about March 3, 2010, Baker & Daniels LLP ("Baker & Daniels") filed a motion for relief from stay to permit the firm to draw down on a pre-petition retainer the Debtor had provided to it in connection with the Texas District Court Proceedings (the "Baker & Daniels Motion for Relief from Stay"). On April 1, 2010, the Court granted the Baker & Daniels Motion for Relief from Stay and entered an order permitting Baker & Daniels to draw down on the pre-petition retainer provided by the Debtors.

(k)     On or about March 4 2010, the Debtor filed a motion to extend the exclusivity date for filing a plan of reorganization (the "Second Exclusivity Motion"). On March 25, 2010, the Court granted the Second Exclusivity Motion and extended the Debtor's exclusive date to file a plan of reorganization to June 23, 2010 and its date to solicit acceptances for its plan to August 23, 2010. These dates were later extended to September 20, 2010, and November 19, 2010, respectively.

(l)     On or about April 8, 2010, the Texas District Court ruled that the patent on which the Texas District Court Proceedings were based was unenforceable due to inequitable conduct before the United States Patent Office. Accordingly, neither Joovy nor Fairclough may seek to enforce the patent that forms the basis of their claims (and their lawyers' claims) against the estate, which

12095203                                    - 10 -

1    were filed in an aggregate amount of over $39 million.  Because the parties are

2    bound by these results, the Debtor anticipates that these claims will be disallowed.

3          (m)    On or about August 9, 2010, Graco Children's Products, Inc.

4    ("Graco") filed an adversary proceeding, Adv. No. 6:10-AP-01485-CB, alleging

5    infringement of a design patent.  That adversary proceeding is now pending in the

6    United States District Court for the Central District of California.  Graco has not

7    specified how much it is seeking in damages.  Nor did Graco obtain relief from the

8    automatic stay before filing the adversary proceeding.  Based on preliminary

9    discussions, the Debtor believes that this action will be terminated under favorable

10    conditions and that its outcome will not affect the Debtor's operations.

11          (n)    Currently there are no pending adversary proceedings or motions

12    except as set forth above.

13    **2.    Other Legal Proceedings.**

14    As discussed above, the Debtor is currently appealing the State Court Judgment

15    with the California Court of Appeal.  Creditor Robert Gardner ("Gardner") is the Plaintiff

16    in that state court case.

17    In addition, although the Court denied the Joovy Motion for Relief from Stay

18    concerning the Texas District Court Proceedings with respect to the Debtor, the Debtor

19    provides the following summary of this litigation.

20    Joovy, Fairclough and Gardner, who owns Joovy, are competitors to the Debtor in

21    the market for baby-related products such as strollers.  On or about April 6, 2006, Joovy

22    and Fairclough commenced a patent infringement action against Baby Trend and Target

23    Corp. ("Target"), contending that the Debtor and Target violated their so-called "375-

24    Patent" by selling the Debtor's "Sit N' Stand®" baby stroller.  Joovy and Fairclough

25    (collectively, the "Texas Plaintiffs") filed the action (the "Patent Action") in the United

26    States District Court for the Northern District of Texas, Dallas Division (the "Texas

27    District Court").  Gardner and Joovy are both competitors of the Debtor in the market for

28    baby-related products.  Following the Debtor's bankruptcy petition, on October 22, 2009,

12095203                          - 11 -

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    the Texas District Court issued an order formally staying the Patent Action as to Baby

2    Trend and severing Plaintiffs' claims against Target into a new case: *Joovy LLC and*

3    *Albert T. Fairclough v. Target Corp.*, Case No. 3:09-cv-02012-F, U.S. District Court for

4    the Northern District of Texas, Dallas Division (the "Severed Action").

5         The Texas Plaintiffs unsuccessfully sought relief from stay to allow the Patent

6    Action to proceed as against Baby Trend.  However, the Court did rule that the Debtor and

7    the Texas Plaintiffs would be bound by and not relitigate any of the issues that determined

8    in the Severed Action.

9         On or about April 8, 2010, the Texas District Court ruled that the '375 patent is

10   unenforceable due to inequitable conduct before the United States Patent Office.

11   Judgment was entered in favor of Target and against Joovy and Fairclough.  The Texas

12   Court's judgment is thus dispositive as to the issue of Baby Trend's liability.  This means

13   that the Texas Plaintiffs should have no claim against Baby Trend.  Nevertheless, the

14   Texas Plaintiffs and their lawyers have filed claims against Baby Trend amounting to

15   approximately $39 million and have appealed their loss to the United States Court of

16   Appeals for the Federal Circuit.

17        **3.      Actual and Projected Recovery of Preferential or Fraudulent Transfers.**

18        The Debtor is not aware of any fraudulent or preferential transfers that may be

19   recovered for the benefit of the estate.

20        **4.      Procedures Implemented To Resolve Financial Problems.**

21        a.    Management.  Following its bankruptcy petition, the Debtor has

22   maintained the same management team that existed prior to the petition date.

23        b.    Litigation.  This bankruptcy was driven by litigation.  The Debtor's

24   involvement in the Texas District Court Proceedings and its liability and the

25   judgment enforcement actions associated with the State Court Judgment would

26   have significantly hampered the Debtor's financial health and interrupted its ability

27   to operate its business.  In addition, the Debtor was subject to patent infringement

28   litigation in federal district court in Los Angeles, California.  The plaintiff in that

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

12095203

- 12 -

case (which has been stayed), Link Treasure Limited ("Link"), has filed a proof of claim alleging a general unsecured claim in the approximate amount of $639,000.

By filing bankruptcy, the Debtor took an important step towards rehabilitation by staying judgment enforcement proceedings, stopping the unnecessary incurrence of legal expenses defending the Texas District Court Proceeding, and enabling the Debtor to restructure the alleged debts stemming therefrom.

### 5.    Current and Historical Financial Conditions.

The Debtor's monthly profits during the post-petition period have fluctuated between highs of $2,113,691.62 (January 2010) and lows of $346,489.48 (August, 2010). Average net monthly operating profits during the post-petition period have amounted to $568,917, and have been consistently positive since the Petition Date. The identity and fair market value of the Estate's assets are listed in Exhibit "B" and its historical financial data are set forth in Exhibit "C".

## III.

## SUMMARY OF THE PLAN OF REORGANIZATION

This section describes the provisions of the proposed Plan, how creditors and interest holders will be affected by the Plan, as well as other pertinent Plan provisions.

**A.    What Creditors and Interest Holders Will Receive under the Proposed Plan.**

As required by the Code, the Plan classifies claims and interests in various classes according to their right and priority. The Plan states whether, in the Debtor's opinion, each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

**B.    Unclassified Claims.**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

they are automatically entitled to specific treatment provided for them in the Code.  As such, the Debtor has **not** placed the following claims in a class:

**1.    Administrative Expense Claims.**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's section 507(a)(1) administrative claims and their treatment under the Plan:

[Chart Begins on Next Page]

| Name of Claimant | Amount Claimed[2] | Treatment |
|---|---|---|
| Snell & Wilmer L.L.P. ("S&W") | $475,000 | Pursuant to the Court's order approving S&W's employment, S&W has been permitted to draw down on its pre-petition retainer, as replenished from time to time, and has been submitting fee statements in accordance with the procedures promulgated by the Office of the United States Trustee.  Thus, the unpaid amount of this claim will likely be much lower (perhaps less than $100,000) as of the Effective Date.  Unless otherwise agreed to by the administrative claimant, this claim will be satisfied by payment in full of Allowed Claim in cash on the later of the Effective Date or the date allowed by the Court. |
| Horvitz & Levy L.L.P. ("H&L") | $375,000 | Pursuant to the Court's order approving H&L's employment, H&L has been permitted to draw down on its pre-petition retainer and has been submitting fee statements in accordance with the procedures promulgated by the Office of the United States Trustee.  The unpaid amount of this claim may be considerably less than this amount as of the Effective Date.  Unless otherwise agreed to by the administrative claimant, this claim will be satisfied by payment in full of Allowed Claim in cash on the later of the Effective Date or the date allowed by the Court. |
| Schwartz & Deutsch, LLP (S&D) | $50,000 | Unless otherwise agreed to by the administrative claimant, this claim will be satisfied by payment in full of the Allowed Claim in cash on the later of the Effective Date or the date allowed by the Court. |
| Baker & Daniels, LLP | $50,000 | Unless otherwise agreed to by the administrative claimant, this claim will be satisfied by payment in full of the Allowed Claim in cash on the later of the Effective Date or the date allowed by the Court. |
| Office of the United States Trustee | Unknown | The Debtor remains current on all post-petition obligations to the Office of the United States Trustee (the "UST").  Unless otherwise agreed to by the administrative claimant, this claim will be satisfied by payment in full of Allowed Claim in cash on the later of the Effective Date or the date allowed by the Court. |
| Total: | ~ $950,000 | |

The above-referenced claims of S&W, H&L, S&D and Baker & Daniels are for professional services and cannot be paid by the estate until approved draw down requests are submitted or such fees and costs are otherwise approved by the Court.  For all such

---

[2] Stated amounts are estimates of total fees and costs through the Effective Date, and are based on information available as of September 30, 2010.  Any requests must comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

12095203

Snell & Wilmer
— L.L.P. —
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1   fees and costs, the professional in question must file and serve a properly noticed fee

2   application and the Court must rule on it. Only the amount of professional fees and costs

3   allowed by the Court will be owed and required to be paid under the Plan.

4         With respect to the UST's fees, pursuant to 28 U.S.C. Section 1930(a)(6), Chapter

5   11 debtors who have confirmed a plan of reorganization are required to continue making

6   quarterly payments based upon disbursements until the case is converted, dismissed or

7   closed. Pre-confirmation fees and costs incurred by the Debtor shall be pro-rated and paid

8   on the Effective Date of the Plan. Post-confirmation fees and costs will be due quarterly

9   and will be paid from income generated by the Debtor's post-confirmation business

10  operations.

11        As indicated above, the Debtor will likely be liable for $950,000 (or perhaps

12  slightly more) in administrative claims on the Effective Date of the Plan, depending on the

13  amount of administrative claims ultimately allowed by the Court and the extent to which

14  claimant(s) agree to receive their payments over time. However, the Debtor will have

15  credits for amounts already deposited into professional retainer accounts or paid pursuant

16  to drawdown requests and/or interim fee applications, so the amount actually estimated to

17  be paid in cash will likely be much less than $500,000 as of the Effective Date. The

18  Debtor estimates that adequate cash will be on hand to satisfy 100% of these anticipated

19  administrative claims.

20      **2.**    **Priority Tax Claims**.

21        Priority tax claims include certain unsecured income, employment and other taxes

22  described by Code Section 507(a)(8). Bankruptcy Code Section 1129(a)(9)(C) requires

23  that each holder of such a Section 507(a)(8) priority tax claim receive the present value of

24  such claim in deferred cash payments, over a period not exceeding sixty months from the

25  petition date of July 9, 2009. The following chart lists all of the Debtor's section

26  507(a)(8) priority tax claims and their treatment under the Plan:

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

12095203

| Name of Claimant | Amount Claimed | Treatment |
|---|---|---|
| Internal Revenue Service | $100.00 | This claim, to the extent allowed, will be paid in full, in cash, on the Effective Date.<br><br>• Est. Pmt. Amt. = $100.00<br>• Begin Date = Effective Date<br>• End Date = Effective Date<br>• Interest Rate = n/a<br>• Total payout = $100.00 |

## C.    Classified Claims and Interests.

### 1.    Classes of Secured Claims.

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes of the Debtor's secured pre-petition claims and their treatment under the Plan:

| Class | Description | Insider? | Impaired? | Treatment |
|---|---|---|---|---|
| 1A | Secured claim of:<br>• Name – Cathay Bank<br>• Collateral Description – Substantially all assets of the estate.<br>• Collateral Value: $22,148,639.<br>• Priority of Lien – First.<br>• Principal owed – $6,500,000<br>• Total Claim Amount: $6,500,000 | No. | Yes. | This creditor will continue to receive monthly payments of interest at the rate specified in the post-petition loan documents. The Debtor and Cathay will continue to abide by all terms of the post-petition loan documents, except that the Maturity Date of the loan described therein shall be extended to a date that is exactly one year after the Effective Date of the Plan. |
| 1B | Secured claim of:<br>• Name – Grand Pacific Trading Group<br>• Collateral Description – security interest in certain of the Debtor's intellectual property<br>• Collateral Value: $12,000<br>• Priority of Lien – First.<br>• Principal owed – 2,697,523.10 | No. | Yes. | The secured portion of this Claim amounts to $12,000. The Creditor will continue to hold its lien on the trademarks subject to its security interest. To the extent such liens are valid, the secured portion of this Claim will be paid as and when funds become available. The unsecured portion of this claim shall be treated as a Class 3A general unsecured claim. |

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

| Class | Description | Insider? | Impaired? | Treatment |
|-------|-------------|----------|-----------|-----------|
| 1C | Secured claim of San Bernardino Tax Collector ($2,806.11) | Yes. | Yes. | To the extent that this is an Allowed Claim, the holder shall be paid in full, in cash, on the later of the Allowed Claims Payment Date or thirty days after the Effective Date of the Plan. |

The Debtor's Secured Claims and their treatment under the Plan are described as follows:

    a.  Secured Lender Claims.

Class 1-A consists of the Secured Claim of the Debtor's post-petition financing lender Cathay Bank. The holder of an allowed Class 1-A Claim shall continue to be paid interest, costs and fees as set forth in the post-petition loan documents. Cathay Bank shall continue to hold its senior lien against substantially all assets of the estate pursuant to the terms of the post-petition loan documents. However, the maturity date of the loan (the "Maturity Date") would be altered. At present, the Maturity Date is set at the earlier of (i) 30 days before the expiration of the stand-by letter of credit issued by the Debtor's principals, (ii) one year after the loan is entered into (i.e., February 26, 2011), or (iii) the Effective Date of the Plan. This Maturity Date would instead be extended to the earlier of (i) 30 days before the expiration of the stand-by letter of credit issued by the Debtor's principals, or (ii) one year after the Effective Date of the Plan.

The Debtor has previously sought and obtained extensions of existing credit lines and has also sought and obtained refinancing of those credit lines. The Debtor most recently accomplished this in February 2010, when it replaced DBS Bank, Ltd., with Cathay Bank, its current lender. Based on statements from loan officers at Cathay, the Debtor expects to maintain a long and fruitful relationship with Cathay and expects to be able to extend the maturity date of the loan before it comes due as modified in the Plan. Nevertheless, in the event Cathay is unwilling or unable to continue the relationship, the Debtor expects to readily find a replacement lender.

12095203

- 18 -

Snell & Wilmer

L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    This Class is impaired, however, it is not entitled to vote on the Plan as it consists

2    of a post-petition claim.

3

4              b.    <u>Secured Trade Debt Claims</u>.

5         Class 1-B consists of the Secured Claim of Grand Pacific Trading Group.  The

6    Debtor reserves its right to dispute the secured claim of Grand Pacific Trading Group and,

7    if appropriate, to seek avoidance of the lien alleged by Grand Pacific Trading Group.  The

8    Debtor has not obtained or conducted a formal valuation of the trademarks allegedly

9    encumbered by Grand Pacific's lien, and their value may be significantly different than

10   the $12,000 estimate used by the Debtor.  Grand Pacific Trading Group, which alleges a

11   lien against these trademarks, is not an "insider" of the Debtor as that term is defined in

12   Section 101 of Title 11 of the United States Code.  The brother of Betty Tsai is an

13   employee at Grand Pacific, but is not an officer, director or shareholder.

14        The holder of the allowed Class 1-B Claim shall be paid as and when funds

15   become available.  The unsecured portion of this claim shall be treated in all respects as a

16   Class 3-A general unsecured claim.

17        This Class is impaired and its holder (i.e., Grand Pacific Trading Group) is entitled

18   to vote on the Plan.

19             c.    <u>Secured Tax Claims</u>.

20        Class 1-C consists of the San Bernardino County Tax Collector.  The Debtor may

21   dispute this Claim on the grounds that the Debtor lacks real property upon which ad

22   valorem real property taxes can be assessed.  The Debtor believes that this Claim may be

23   properly asserted against its landlord Upward Pacific.  However, to the extent this Claim

24   is an Allowed Claim, the holder of an Allowed Class 1-C Claim shall be paid in full, in

25   cash, on the later of the Allowed Claims Payment Date or thirty days after the Effective

26   Date of the Plan.

27        This Class is impaired and its holder is entitled to vote on the Plan.

28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    **2.    Classes of Priority Unsecured Claims.**

2        Certain priority claims that are referred to in Code Sections 507(a)(4), (5), (6) and

3    (7) are required to be placed in classes.[3]  Those types of claims are entitled to priority

4    treatment as follows: The Code requires that each holder of such a claim receive cash on

5    the Effective Date equal to the allowed amount of such claim.  However, a class of

6    unsecured priority claim holders may vote to accept deferred cash payments of a value, as

7    of the Effective Date, equal to the allowed amount of such claim.  The following chart

8    lists all classes of the Debtor's priority unsecured claims and their treatment under the

9    Plan:

10

11

| Class | Description | Impaired? | Treatment |
|-------|-------------|-----------|-----------|
| 2 | Priority unsecured wage claims pursuant to Bankruptcy Code Section  503(a)(4)  Aggregate amount of claims in Class: $12,074 | Yes. | Each holder of an Allowed Class 2 Claim shall receive payment in full of his or her Allowed Claim in six equal monthly installments beginning on the first business day that is at least thirty days after the Effective Date of the Plan, plus interest at the rate of 10% per annum. |

16    This Class is impaired and its holders are entitled to vote on the Plan.

17

18    **3.    Classes of General Unsecured Claims.**

19        General unsecured claims are unsecured claims not entitled to priority under Code

20    Section 507(a).  The following chart identifies the Plan's treatment of the classes

21    containing all of the Debtor's general unsecured claims (see Exhibit "D" for detailed

22    information about each general unsecured claim.)

23                    [Chart Begins on Next Page]

24

25    ---

[3] Section 507(a)(4) – Wages, salary or commissions earned by an individual within 180 days from the petition date of no more than $10,950;

26    Section 507(a)(5) – Claims for contribution to employee benefit plans within 180 days of the petition date;
Section 507(a)(6) – Claims of up to $5,400 by persons raising grain against a debtor operating a grain

27    storage facility or engaged as a United States fisherman against a person operating a fish storage or processing facility; and

28    Section 507(a)(7) – Claims of up to $2,425 by individuals for a pre-petition deposit in connection with the purchase, lease or rental of undelivered property or services intended for the personal use of the individual.

*Snell & Wilmer*
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

| Class | Description[4] | Impaired? | Treatment[5] |
|---|---|---|---|
| 3A | Allowed general unsecured claims (including deficiency claims where secured claimant is not paid in full).<br><br>Aggregate amount of claims in Class: $3,749,993.32 | Yes. | Holders of allowed general unsecured claims shall receive deferred cash payments equal to 100% of the allowed amount of the claim plus interest at the rate of 1.0 % per annum payable in 144 equal monthly installments commencing on the first Monthly Distribution Date and thereafter on each succeeding Monthly Distribution Date.<br><br>• Pmt Interval – Monthly<br>• Pmt Amt – Approx. $27,646.20<br><br>• Estimated Begin Date – 12-31-10<br>• Estimated End Date – 12-31-22<br>• Interest Rate – 1.0%<br>• Total payout – $3,981,052.80<br><br>***Provided that*** the Liquidation Contingency does not occur.  In the event the Liquidation Contingency occurs, please see paragraph below that will describe the treatment afforded to allowed Class 3A general unsecured claims.  In the event the Liquidation Contingency occurs, holders of Allowed Class 3A general unsecured claims will be paid pro-rata along with holders of Allowed Claims in Classes 3B, 3C and 3D, approximately 11.448% of their claims upon liquidation of the Debtor, less any payments already received by such claimholder. |
| 3B | Unsecured Pending Litigation Claims ($638,925) | Yes. | Holders of allowed Class 3B Claims shall receive deferred cash payments equal to 100% of the allowed amount of the Claim plus interest at the rate of 1.0 % per annum payable in 144 equal monthly installments commencing on the first Monthly Distribution Date and thereafter on each succeeding Monthly Distribution Date.<br><br>• Pmt Interval – Monthly<br>• Pmt Amt – Approx. $4,969.42<br>• Estimated Begin Date – 12-31-11<br>• Estimated End Date – 12-31-23<br>• Interest Rate – 1.0%<br>• Total payout – $715,596.48<br><br>***Provided that*** the Liquidation Contingency does not occur.  In the event the Liquidation Contingency occurs, please see paragraph below that describes the treatment afforded to |

---

[4] The amounts set forth include Disputed Claims to which the Debtor intends to object and that the Debtor anticipates will be reduced and/or disallowed prior to the Effective Date.

[5] The amounts set forth include Disputed Claims to which the Debtor intends to object and that the Debtor anticipates will be reduced and/or disallowed prior to the Effective Date.

12095203

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

| Class | Description[4] | Impaired? | Treatment[5] |
|---|---|---|---|
| | | | allowed Class 3B general unsecured claims. In the event the Liquidation Contingency occurs, holders of Allowed Class 3A general unsecured claims will be paid pro-rata along with holders of Allowed Claims in Classes 3A, 3C and 3D, approximately 11.448% of their claims upon liquidation of the Debtor, less any payments already received by such claimholder. |
| 3C | Unsecured Texas Litigation Claims | Yes. | Class 3C unsecured claims consist of the claims of Joovy, Fairclough and their lawyers emanating from the Texas District Court Proceedings.  Given the judgment against these parties, the Debtor does not anticipate these claims being allowed in the bankruptcy. <br><br> Nevertheless, to the extent any one or any combination of these claims are allowed against the Debtor in an amount aggregating more than $6,325,000, the Debtor shall either pay the claims as Class 3B general unsecured claims or elect the Liquidation Contingency described below.  In the event the Liquidation Contingency occurs, holders of Allowed Class 3A general unsecured claims will be paid pro-rata along with holders of Allowed Claims in Classes 3A, 3B and 3D, approximately 11.448% of their claims upon liquidation of the Debtor, less any payments already received by such claimholder. <br><br> Even if these Claims are Allowed in Full, the Debtor estimates that it will have sufficient resources to pay them in full over the life of the Plan.  In such event, holders of Allowed Class 3C Claims shall receive deferred cash payments equal to 100% of the allowed amount of the Claim plus interest at the rate of 1.0 % per annum payable in 144 equal monthly installments commencing on the first Monthly Distribution Date and thereafter on each succeeding Monthly Distribution Date. <br><br> • Pmt Interval – Monthly <br> • Pmt Amt – Approx. $287,946.30 <br> • Estimated Begin Date – 12-31-11 <br> • Estimated End Date – 12-31-23 <br> • Interest Rate – 1.0% <br> • Total payout – $41,464,267.20 |

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

12095203

- 22 -

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

| Class | Description[4] | Impaired? | Treatment[5] |
|---|---|---|---|
| 3D | Unsecured Guaranty Claims ($3,142,433.00)<br><br>The Class 3D Claim of Bank of the West is based on the Debtor's guaranty, as tenant, of the landlord's obligations on its mortgage. Upward Pacific, LLC, which owns the building in which Baby Trend operates (and in which Baby Trend is the sole tenant), owes approximately $3.1 million to Bank of the West. Baby Trend guarantied the mortgage, on which Upward Pacific, LLC, is obligated. Upward Pacific, LLC, is owned by Denny and Betty Tsai, who also own all of the stock in Baby Trend. | Yes. | Holders of Allowed Class 3D Claims shall continue to be paid directly by the principal obligor rather than the Debtor. The Debtor shall continue to be liable on the guaranty, pursuant to the terms thereof.<br><br>In the event of a default by the principal obligor which would entitle the claimant to pursue its rights under the guaranty, the Debtor would make payments to the Class 3D claimholder as though it were a claimholder in Class 3A.<br><br>***Provided that*** the Liquidation Contingency does not occur. In the event the Liquidation Contingency occurs, please see paragraph below that describes the treatment afforded to allowed Class 3D general unsecured claims. In the event the Liquidation Contingency occurs, holders of Allowed Class 3D general unsecured claims will be paid pro-rata along with holders of Allowed Claims in Classes 3A, 3B and 3C, approximately 11.448% of their claims upon liquidation of the Debtor, less any payments already received by such claimholder. |
| 3E | Claim of Robert P. Garnder III ($9,960,255)<br><br>The Class 3E Claim of Robert P. Gardner III arises out of the State Court Judgment that is current the subject of an appeal pending before the California Court of Appeals. | No. | The Holder of an Allowed Class 3E Claim shall receive payment in cash, in full, on the later of the Effective Date or the date on which the disputed Class 3E claim becomes an Allowed Claim.<br><br>• Est.Pmt.Amt. = unknown, but likely no greater than $9,960,255.<br>• Begin Date = Later of the Effective Date or the date on which the Claim becomes an Allowed Claim.<br>• End Date = See above.<br>• Interest Rate = N/A<br>• Total Payout = See above.<br><br>Payment of this claim shall be made by a combination of funds of the Debtor equal to no more than 11.448% of the Allowed Amount of said Claim, and funds pledged by the Debtor's shareholders, Denny and Betty Tsai, and the Debtor's lessor, Upward Pacific, LLC. Thus, that portion of the Class 3E Claim that is Allowed, and that would be satisfied in the event of the Liquidation Contingency, will be satisfied by the Debtor alone, with the remainder to be satisfied from funds of the Debtor's shareholders and Upward Pacific. |

12095203

- 23 -

**The Liquidation Contingency**

The Liquidation Contingency can be elected by the Debtor in the event the aggregate amount of Allowed Class 3-C Claims against the Debtor (i.e., Claims arising from the Texas District Court Proceedings) exceeds $6,325,000. In that event, if the Debtor is unable to pay the Allowed Class 3-C Claims over time as set forth above, the Debtor shall sell all of its assets to the highest bidder pursuant to Bankruptcy Code Section 363. Proceeds shall be distributed to holders of Allowed Claims pursuant to the terms of Section 507 of the Bankruptcy Code. This means that proceeds would first be used to satisfy Allowed Class 1-A Secured Claims, except for proceeds of the Debtor's trademarks, which would be used to satisfy Allowed Class 1-B Secured claims. Excess proceeds would then be used to satisfy Allowed Class 1-C Secured Claims, then to satisfy Allowed Administrative Claims, then to satisfy Allowed Class 2 Class, then to satisfy priority tax claims, and then Allowed Claims in Classes 3A, 3B, 3C and 3D, which shall be paid pro-rata. Any surplus shall be paid to Class 4 Equity Interests, which Equity Interests would be canceled. The Debtor would then file articles of dissolution with the California Secretary of State.

The Debtor does not anticipate needing to utilize the Liquidation Contingency, however, in that it believes the Class 3C Claims will be disallowed on the merits and further, that its post-confirmation revenues will be sufficient to pay any allowed amounts in full over time.

**4.    Classes of Interest Holders.**

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor. If the debtor is a corporation, entities holding preferred or common stock in the debtor are interest holders. If the debtor is a partnership, the interest holders include both general and limited partners. If the debtor is an individual, the debtor is the interest holder. In the present case, Denny and Betty Tsai are the only persons having an equity interest in the Debtor. They hold 100% of the Debtor's outstanding common stock. The following chart identifies the Plan's treatment of the class of interest holders:

12095203                                    - 24 -

| Class | Description | Impaired? | Treatment |
|---|---|---|---|
| 4 | Equity interest holders holding 100% of the Debtor's shares. | No. | Holders retain their interests unless the Debtor elects the Liquidation Contingency, in which case the Class 4 Equity Interests will be canceled. |

This Class is unimpaired and is deemed to accept the Plan, although its holders are not entitled to vote on the Plan.

**D.    Procedures for Resolving Claims Objections.**

The Debtor intends to file objections to certain claims prior to the Effective Date, including but not necessarily limited to the Class 3B Claim of Gardner and all Class 3C Claims. The Debtor anticipates resolving many such objections prior to the date required for payment on account of any claim to which the Debtor has objected. To the extent a claim objection has not been resolved prior to the date that such claim would otherwise be required to be paid pursuant to this Plan, then no payment shall be made on account of such claim until the objection to such claim is resolved.

**E.    Means of Effectuating the Plan.**

**1.    Funding for the Plan.**

The Debtor proposes to fund the Plan with a combination of profits derived from its post-petition and post-confirmation business operations. The Debtor's estimated cash flow projections for the years 2010 through 2022, as well as the Debtor's analysis of available cash on the Effective Date, are set forth in Exhibit "E" and below in Section IV.C, entitled "Feasibility." In sum, the Debtor believes that its operational revenues will suffice to fund the Plan.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

**2.      Disputed Claims Reserve.**

a.      <u>Treatment of Disputed Claims</u>.

Notwithstanding any other provisions of the Plan, no payments or distributions will be made on account of any Claim until such Claim becomes an Allowed Claim. The Reorganized Debtor may, at any time, request that the Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, irrespective of whether the Reorganized Debtor previously objected to such Claim or whether the Court has ruled on any such objection. The Court will retain jurisdiction to estimate any contingent or unliquidated Claim at any time during litigation concerning any objection to the Claim, including during the pendency of any appeal relating to any such objection. If the Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Court.

b.      <u>Distributions on Account of Disputed Claims Once They Are</u>
<u>Allowed.</u>

On the later of the next Monthly Distribution Date or 30 days after the date a Disputed Claim becomes an Allowed Claim, the Disbursing Agent will commence making distributions on account of any Disputed Claim that has become an Allowed Claim during the preceding calendar month. Such distributions will be made pursuant to the provisions of the Plan governing the applicable Class. Holders of Disputed Claims or Disputed Interests that are ultimately allowed will also be entitled to receive, on the basis of the amount ultimately allowed, matured and payable interest, if any, at a rate provided for the Class to which such Claim belongs.

In sum, the Debtor will establish a segregated reserve account, and each month will deposit into the reserve account an amount sufficient to pay any Disputed Claims in Classes 3A and 3B as if such claims had been allowed in full. Upon entry of an order

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1  disallowing any such claim, the amount reserved to pay such claim will be refunded to the

2  Debtor.

3      With respect to Class 3E, the Debtor shall retain at least $1,140,250 on deposit,

4  which will be sufficient to pay 11.448% of the amount of the claim, as filed, pending

5  resolution of the Debtor's anticipated objection to said claim.  As set forth above, the

6  Debtor will pay no more than 11.448% of the Allowed Amount of the Class 3E Claim,

7  with the remainder to be paid in full, in cash, by Denny Tsai and Upward Pacific, LLC.

8      In the event that a Final Claims Allowance Order is entered with respect to any

9  such disputed claim, the funds reserved for payment of such claim will be paid in

10  accordance with the provisions of the Plan with respect to such claim.  See, "Disputed

11  Claims Reserve", infra.

12

13      c.    Allowance of Claims Subject to Bankruptcy Code Section 502(d).

14      Allowance of Claims shall be in all respects subject to the provisions of Section

15  502(d) of the Bankruptcy Code.

16

17      d.    Reorganized Debtor Disputed and Estimated Claims Reserve.

18      On and after the Effective Date, the Reorganized Debtor shall maintain in reserve

19  such Cash as the Reorganized Debtor estimates to be necessary to satisfy the distributions

20  required to be made under the Plan if each Disputed Claim and Estimated Claim in

21  Classes 1C, 3A, 3B and 3E becomes an Allowed Claim against the Reorganized Debtor.

22  For purposes of determining Cash to be reserved, the Cash shall be deemed distributed as

23  of the Effective Date regardless of the date on which it is actually distributed to the

24  holders of Disputed Claims or Estimated Claims that become Allowed Claims after the

25  Effective Date.  For the avoidance of doubt, distributions of Cash to any Person holding a

26  Disputed Claim or Estimated Claim in Classes 1C, 3A, 3B and 3E against the

27  Reorganized Debtor that becomes an Allowed Claim against the Reorganized Debtor after

28  the Effective Date shall be made together with any payments or other distributions that

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

would have been made to such Person had its Disputed Claim or Estimated Claim become an Allowed Claim prior to or on the Effective Date.

e.    Settling Disputed Claims.

The Reorganized Debtor shall be authorized to settle or withdraw any objections to any Disputed Claims following the Effective Date pursuant to procedures as authorized by the Bankruptcy Court.

**3.    Post-Confirmation Management.**

Current management will remain in its current positions.  Except as referenced in Section II.B, supra, compensation will not be significantly adjusted for 2010, but is expected to increase by roughly ten percent in future years as set forth in the projections attached as Exhibit "E".  This management arrangement will continue for the foreseeable future.  Existing management will remain in charge of all daily operations and strategic planning.

**4.    Disbursing Agent.**

The Debtor will act as the disbursing agent for the purpose of making all disbursements provided for under the Plan.  The Debtor will serve without bond.  The Debtor will be vested with all rights, obligations and duties necessary to carry out the terms of the Plan.  The Debtor will serve without compensation for services rendered.  However, all post-confirmation expenses incurred by the Debtor in carrying out the terms of the Plan will be paid by funds generated from the Debtor's post-confirmation business operations.

**F.    Risk Factors.**

The proposed Plan, based as it is upon a continuation of current economic conditions, entails certain risks.  There is a possibility of another general downturn in the

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    economy, which could affect sales of the Debtor's products. Such a downturn would

2    reduce the Debtor's ability to generate the income needed to sustain the payments

3    proposed under the Plan. The Debtor's financial projections assume that the Debtor's

4    business will experience modest growth over the next twelve years. A general business

5    downturn, or dramatically increased competition, could hinder the Debtor's prospects of

6    realizing such growth.

7        Nevertheless, the Debtor believes is projections are conservative and realistically

8    achievable given its historical performance both in and out of Chapter 11.

9

10   **G.    Other Plan Provisions.**

11

12       **1.    Executory Contracts and Unexpired Leases (11 U.S.C. Section 365).**

13       The Debtor is the lessee under one lease concerning its Ontario business facilities

14   located at 1607 South Campus Drive, Ontario, California 91761. The monthly rent is

15   $46,783.20. The Debtor's landlord is Upward Pacific, LLC. Upward Pacific, LLC, is

16   owned by Betty and Denny Tsai, who are also the Debtor's principals. The Debtor

17   intends to renew this lease and expects Upward Pacific, LLC, to agree to the renewal.

18       The Debtor is also party to several significant supplier contracts with major

19   retailers. These agreements require the Debtor to indemnify the retailer/customer for

20   litigation expenses arising from alleged patent violations. The Debtor has honored its

21   commitments under these agreements by continuing to pay Target's litigation expenses in

22   the Severed Action.

23       The Plan constitutes a motion to assume all executory contracts and unexpired

24   leases listed on the Debtor's Amended Schedule "G", filed on or about December 23,

25   2009, except for (i) legal services agreements except to the extent such agreements have

26   been authorized by an order employing such professional on behalf of the bankruptcy

27   estate, and (ii) any executory contracts and unexpired leases that have already been

28   assumed or rejected pursuant to an earlier Order of the Court or that are the subject of a

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    motion for such an Order pending as of the Confirmation Hearing. The Debtor does not

2    believe any cure amount is necessary in order to assume such contracts and leases. Unless

3    the non-Debtor party to any such executory contract or unexpired lease to be assumed

4    files and serves on the Debtor's counsel an objection to the cure amount specified on that

5    schedule on or before the last date established by the Court to file and serve objections to

6    the confirmation of the Plan, such lease or contract shall be assumed and the cure amount

7    of zero shall be forever binding on such non-debtor party to said executory contract or

8    lease.

9        Any pre-petition executory contracts or unexpired leases not listed on the Debtor's

10   Amended Schedule "G", as well as the legal services agreements listed therein except

11   insofar as said professionals have been duly employed by an order of this Court, shall be

12   deemed rejected upon confirmation of the Debtor's Chapter 11 Plan. The order

13   confirming the Plan shall constitute an order deeming such unexpired leases and

14   executory contracts rejected.

15       Except as otherwise agreed by the parties to an executory contract or unexpired

16   lease, the Debtor will cure any and all undisputed defaults within 30 days of the Effective

17   Date under any executory contract or unexpired lease assumed pursuant to the Plan and to

18   which it is a party, in accordance with Section 365 of the Bankruptcy Code. All disputed

19   defaults that are required to be cured shall be cured either within 30 days of the entry of a

20   Final Order determining the amount, if any of the Debtor's liability with respect thereto,

21   as or as may otherwise be agreed by the parties. The Confirmation Order shall state that

22   all pre-petition contracts and unexpired leases that are listed on the schedule described

23   herein are deemed assumed under the Plan.

24       Any Claim for damages arising from the rejection of an executory contract or

25   unexpired lease must be filed and served on Debtor's counsel within thirty (30) days after

26   the order of the Court approving such rejection becomes a Final Order or be (i) forever

27   barred and unenforceable against the Debtor, its Estate, the Reorganized Debtor and its

28   property; and (ii) barred from receiving any distribution under the Plan. All Allowed

12095203                                    - 30 -

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    Claims arising from the rejection of executory contracts or unexpired leases shall be

2    treated as Class 3A General Unsecured Claims against the Debtor.

3    **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING**

4    **FROM THE REJECTION OF A LEASE OR CONTRACT WILL BE THIRTY (30) DAYS AFTER**

5    **THE REJECTION OCCURS.** Any claim based on the rejection of a contract or lease will be

6    barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

7        **2.**    **Changes in Rates Subject to Regulatory Commission Approval.**

8        This Debtor is not subject to governmental regulatory commission approval of its

9    rates.

10       **3.**    **Retention of Jurisdiction.**

11       Notwithstanding the entry of the Confirmation Order and occurrence of the

12   Effective Date, the Court will retain such jurisdiction over the Case after the Effective

13   Date to the full extent permitted by law, including, without limitation, jurisdiction to:

14       (a)    Allow, disallow, determine, liquidate, classify, subordinate, estimate or

15   establish the priority or secured or unsecured status of any Claim or interest, including the

16   resolution of any request for payment of any Administrative Claim, the resolution of any

17   objections to the allowance or priority of Claims or Interests and the resolution of any

18   dispute related thereto;

19       (b)    Grant or deny applications for the allowance of compensation or

20   reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for

21   periods ending before the Effective Date;

22       (c)    Resolve any matters related to the assumption or rejection of any executory

23   contract or unexpired lease to which the Debtor is a party or with respect to which the

24   Debtor may be liable, and to hear, determine, and if necessary, liquidate any Claims

25   arising therefrom;

26       (d)    Ensure that distributions to holders of Allowed Claims are accomplished

27   pursuant to the provisions of the Plan;

28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

12095203

(e)    Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor, the Reorganized Debtor or the Chapter 11 Case that may be pending on the Effective Date;

(f)    Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided herein;

(g)    Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan or the Confirmation Order, including the release and injunction provisions set forth in and contemplated by the Plan and the Confirmation Order, or any entity's rights arising under or obligations incurred in connection with the Plan or the Confirmation Order;

(h)    Subject to any restrictions on modifications provided in any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Court Order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, as such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(i)    Issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(j)    Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    (k)    Determine any other matters that may arise in connection with or relating to

2   the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument,

3   release, indenture, or other agreement or document created in connection with the Plan,

4   the Disclosure Statement or the Confirmation Order, except as otherwise provided in the

5   Plan; and

6    (l)    Enter a final decree or an Order closing or concluding the Case.

7    The foregoing list is illustrative only and not intended to limit in any way the

8   Court's exercise of jurisdiction.  If the Court abstains from exercising jurisdiction or is

9   otherwise without jurisdiction over any matter arising out of the Case, including, without

10  limitation the matters set forth in this Article, this Article shall have no effect upon and

11  shall not control, prohibit or limit the exercise of jurisdiction by any other court having

12  competent jurisdiction with respect to such matter.

13  **4.    Retirement Benefits.**

14   The Debtor does not offer any retirement plans.

15  **H.    Tax Consequences of the Plan.**

16  **THIS DOCUMENT DOES NOT PURPORT TO GIVE YOU TAX ADVICE.**

17  **PARTIES READING THIS DISCLOSURE STATEMENT ARE ADVISED TO**

18  **CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX**

19  **CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY**

20  **THIS PLAN, INCLUDING THE FEDERAL, STATE, LOCAL AND FOREIGN**

21  **TAX CONSEQUENCES.**

22  **1.    Generally.**

23   Implementation of the Plan may have federal, state and local tax consequences to

24  the Debtor and creditors of the Debtor.  No tax opinion has been sought or will be

25  obtained with respect to any tax consequences of the Plan, and the following disclosure

26  (the "Tax Disclosure") does not constitute and is not intended to constitute either a tax

27  opinion or tax advice to any person.  Rather, the Tax Disclosure is provided for

28  informational purposes only.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

12095203                    - 33 -

1    Moreover, the Tax Disclosure summarizes only certain of the potential federal

2    income tax consequences associated with the Plan's implementation, and does not attempt

3    to comment on all such aspects of the Plan's implementation, actual or potential.  In

4    addition, certain of the federal income tax consequences described in the Tax Disclosure

5    are dependent on factual determinations that are subject to uncertainties.  Similarly, the

6    Tax Disclosure does not attempt to consider any facts or limitations applicable to any

7    particular creditor or interest holder which may modify or alter the consequences

8    described below.  The Tax Disclosure also does not address state, local or foreign tax

9    consequences or the consequences of any non-income federal tax.

10    The Tax Disclosure is based upon the provisions of the Tax Code and the

11    regulations promulgated thereunder, existing judicial decisions and administrative rulings.

12    In light of the constant evolution of the Tax Code, no assurance can be given that

13    legislative, judicial or administrative changes will not be forthcoming that would affect

14    the accuracy of the discussion below.  Any such changes could be material and could be

15    retroactive with respect to the transactions entered into or completed prior to the

16    enactment or promulgation.  Furthermore, the tax consequences of certain aspects of the

17    Plan are uncertain due to a lack of applicable legal authority and may be subject to judicial

18    or administrative interpretations that differ from the discussion below.

19

20    **2.    Post-Confirmation Taxes.**

21    The Plan provides for the reorganization of the Debtor and the Debtor continuing

22    to operate its business without significant changes.  The Debtor will simply continue to

23    pay taxes in the ordinary course of business as they are incurred.

24

25    **3.    Reduction of Indebtedness.**

26    The Debtor intends to continue its existence following the confirmation of the Plan.

27    Because the Debtor intends to pay all Allowed Claims in full, the Debtor does not

28    anticipate a "Debt Discharge Amount" with respect to its outstanding indebtedness.

12095203

- 34 -

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    Actual debt cancellation in excess of the fair market value of the consideration – stock,

2    cash or other property – paid in respect of such debt is often referred to, and will

3    hereinafter be referred to, as a "Debt Discharge Amount."

4       In general, the Tax Code provides that a taxpayer who realizes a cancellation or

5    discharge of indebtedness must include the Debt Discharge Amount in its gross income in

6    the taxable year of discharge. Debt Discharge Amounts may arise with respect to

7    creditors who receive consideration in partial or full satisfaction of their Claims, including

8    any accrued interest. The Debtor's Debt Discharge Amount may be increased to the

9    extent that unsecured creditors holding unscheduled claims fail to timely file proofs of

10    claim and their claims are discharged on the confirmation date pursuant to Section 1141 of

11    the Bankruptcy Code. No income from the discharge of indebtedness is realized,

12    however, to the extent that payment of the liability being discharged would have given

13    rise to a deduction.

14       A taxpayer's Debt Discharge Amount is specifically excluded from gross income if

15    the discharge of indebtedness occurs pursuant to a confirmed plan in Bankruptcy. The

16    Debtor believes the "Bankruptcy Exception" applies here. Therefore, the Debtor believes

17    it will not be required to include in income any Debt Discharge Amount as a result of the

18    implementation of the Plan. The Debt Discharge Amount excluded from income pursuant

19    to the Bankruptcy Exception, however, must be applied to reduce certain tax attributes of

20    the Debtor pursuant to Section 108(b) of the Tax Code. Tax attributes are reduced in the

21    following order of priority: net operating losses and carryovers, general business credits,

22    minimum tax credits, capital loss carryovers, basis of property of the taxpayer, passive

23    activity loss or credit carryovers, and foreign tax credit carryovers. Tax attributes are

24    generally reduced by one dollar for each dollar excluded from gross income, except that

25    general tax credits, minimum tax credits and foreign tax credits are reduced by less than

26    100 cents for each dollar excluded from gross income. Although it is possible to make an

27    election to alter the order of priority of attribute reduction by first applying the Debt

28    Discharge Amount to depreciable property held by the Debtor (in an amount not to exceed

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

12095203

1    the aggregate adjusted basis of such property), the Debtor does not presently intend to

2    make such election.  The deadline for making such an election is the due date (including

3    extensions) of the Debtor's federal income tax return for the taxable year in which such

4    debt is discharged pursuant to the Plan.

5

6        **4.    Tax Consequences to Creditors.**

7        The tax consequences of the Plan to a creditor will depend on whether the

8    creditor's claim constitutes a "security" of the Debtor for federal income tax purposes and

9    the type of consideration received by the creditor in exchange for, or payment of, such

10   creditor's claim, whether the creditor receives consideration in more than one tax year of

11   the creditor, and whether all the consideration received by the creditor is deemed to be

12   received by that creditor in an integrated transaction.  In general, a "security" for federal

13   income tax purposes is a long-term debt instrument and the term does not include stock.

14       The Debtor does not purport to speculate as to whether any claims against it would

15   constitute a "security" for federal income tax purposes.  However, to the extent any such

16   claims do constitute "securities" for federal income tax purposes, the tax consequences to

17   such claimholders could differ substantially from those hypothesized below.

18       Pursuant to the Plan, holders of allowed claims will receive distributions of cash in

19   exchange for their allowed claims.  Whether and to the extent to which such a payment is

20   includible in the holder's gross income will be determined by reference to the claim in

21   respect of which the distribution is made.  In general, the holder will recognize ordinary

22   income in respect of such payment if the claim is in respect of an item generating ordinary

23   income, such as wages, to the holder.  Similarly, if a claim is held as part of a trade or

24   business, the holder of such claim should generally recognize ordinary loss to the extent

25   that such holder's adjusted basis in the claim exceeds the amount received by such holder

26   with respect to such claim.  If a claim is held in respect of a capital asset, the holder

27   should generally recognize a capital gain or loss.  However, any distribution attributable

28   to accrued but unpaid interest will be treated as ordinary income, regardless of whether

12095203                                          - 36 -

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

the origin of the claim is capital in nature or whether gain or loss is otherwise recognized on the claim.

**ALL CREDITORS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE CONSEQUENCES TO THEM O FTHE TRANSACTIONS CONTEMPLATED BY THE PLAN.**

**5.     Supplemental General Disclaimer.**

This Disclosure Statement does not purport to give advice as to the possible tax consequences of the Plan to creditors. **CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS. THE DEBTOR CANNOT AND DOES NOT** make any representations concerning any tax consequences because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

Circular 230 Disclaimer: To ensure compliance with Treasury Regulations governing written tax advice, please be advised that any tax advice included in this communication, including any attachments, is not intended, and cannot be used, for the purpose of (i) avoiding any federal tax penalty or (ii) promoting, marketing, or recommending any transaction or matter to another person.

**IV.**

**CONFIRMATION REQUIREMENTS AND PROCEDURES**

**PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN IS VERY COMPLEX.**

The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. **THE DEBTOR CANNOT AND DOES NOT** represent that the discussion contained below is a complete summary of the law on this topic.

12095203

Many requirements must be met before the Court can confirm a plan.  Some of the requirements include that the plan must be proposed in good faith, acceptance of the plan by creditors, whether the plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the plan is feasible.  These requirements are **not** the only requirements for confirmation.

## A.      Who May Vote or Object.

### 1.      Who May Object to Confirmation of the Plan.

Any party-in-interest may object to the confirmation of the Plan, but as explained below, not everyone is entitled to vote to accept or reject the Plan.

### 2.      Who May Vote To Accept or Reject the Plan.

A creditor or interest holder has a right to vote for or against the plan if that creditor or interest holder has a claim which is both (1) allowed for voting purposes and (2) classified in an impaired class.

#### a.      What Is an Allowed Claim or Interest.

As noted above, a creditor or interest holder must first have an **allowed claim or interest** to have the right to vote.  Generally, any proof of claim or interest will be allowed, unless a party-in-interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and a hearing, either overrules the objection or allows the claim or interest for voting purposes.

**FOR CREDITORS OR EQUITY INTEREST HOLDERS WHOSE CLAIMS OR INTERESTS ARE NOT SCHEDULED OR ARE SCHEDULED AS DISPUTED, CONTINGENT OR UNLIQUIDATED, THE DEADLINE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS MARCH 31, 2010.**  A creditor or interest holder may have an allowed claim or interest

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1)

2    it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed,

3    contingent or unliquidated, and (2) no party in interest has objected to the claim.  An

4    interest is deemed allowed if it is scheduled and no party in interest has objected to the

5    interest.  Consult the Claims Analysis attached as Exhibit "D" to see how the Debtor has

6    characterized your claim or interest.

7

8                    b.        What Is an Impaired Claim or Interest.

9        As noted above, the holder of an allowed claim or interest only has the right to vote

10   if the claim or interest is in a class that is **impaired** under the Plan.  A class is impaired if

11   the Plan alters the legal, equitable or contractual rights of the members of that class.  For

12   example, a class comprised of general unsecured claims is impaired if the Plan fails to pay

13   the members of that class 100% of what they are owed.

14       In this case, the Debtor believes the following classes are impaired: Classes 1A,

15   1B, 2, 3A, 3B, 3C and 3D.  The Debtor further believes that holders of claims and

16   interests in those Classes are entitled to vote to accept or reject the Plan.  Parties who

17   dispute the Debtor's characterization of their claim or interest as being impaired or

18   unimpaired may file an objection to the Plan contending that the Debtor has incorrectly

19   characterized the class.

20

21       **3.    Who is Not Entitled to Vote.**

22       The following four types of claims are **not** entitled to vote: (1) claims that have

23   been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant

24   to Code sections 507(a)(2), 507(a)(3) and 507(a)(8); and (4) claims in classes that do not

25   receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled

26   to vote because such classes are deemed to have accepted the Plan.  Claims entitled to

27   priority pursuant to Code sections 507(a)(2), 507(a)(3) and 507(a)(8) are not entitled to

28   vote because such claims are not placed in classes and they are required to receive certain

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

treatment specified by the Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. **EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE THE RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.**

### 4.    Who Can Vote in More Than One Class.

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.  In this Case, only the Class 1B claim has both a secured and an unsecured component.  The unsecured component is treated as a Class 3A general unsecured claim under the Plan.

### 5.    Votes Necessary To Confirm the Plan.

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class (i.e., at least one of Classes 1A, 1B, 1C, 2, 3A, 3B, 3C and 3D) has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram-down" on non-accepting classes, as discussed below in paragraphs 7 and 8 of this Section.  The Debtor believes that its Plan can satisfy those requirements.

### 6.    Votes Necessary for a Class To Accept the Plan.

A class of claims is considered to have "accepted" the Plan when more than one half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims (which actually voted) voted in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

12095203

- 40 -

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

### 7.     Treatment of Non-Accepting Classes.

As noted above, if at least one, but not necessarily all, impaired classes accepts the proposed Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Code. The process by which non-accepting classes are forced to be bound by the terms of a Plan is commonly referred to as "cram-down." The Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all consensual requirements except the voting requirements of Section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in Code Section 1129(b) and applicable case law.

### 8.     Request for Confirmation Despite Non-Acceptance by Impaired Class(es).

In the event an impaired class votes to reject the Plan, the Debtor will ask **the Court** to confirm the Plan by cram-down on those impaired classes. As set forth above, a plan may be crammed down on a non-accepting class of claims if the plan does not "discriminate unfairly" and is "fair and equitable." In addition, a plan may be crammed down only if at least one impaired class has voted to accept the plan. Therefore, if all impaired classes vote against the Plan, the Plan cannot be confirmed.

Here, the Debtor believes that it will be able to obtain the consent of at least one impaired, non-insider class, and possibly more. Accordingly, the Debtor believes it will be able to satisfy the Section 1129 requirement that at least one impaired class will vote to accept the Plan.

Please note that the proposed Plan **cannot** be crammed down on certain types of classes. As a result, IF ANY SUCH CLASS DOES NOT VOTE TO ACCEPT THE PLAN, THE PLAN WILL NOT BE CONFIRMED. However, the Debtor believes that no such classes exist in this case.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

12095203

**B.      Liquidation Analysis.**

Another confirmation requirement is the "Best Interests Test", which requires a liquidation analysis. Under the Best Interests Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm the Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Debtor maintains that this requirement is met, for the following reasons:

First, unless the Liquidation Contingency is elected, the Plan proposed to pay creditors 100% of their Allowed Claims. By definition, creditors cannot receive more in a liquidation than 100%. And if the Liquidation Contingency is elected, then creditors by definition will not fare any worse than in a liquidation setting.

Second, secured creditors will foreclose on the assets of the estate, leaving less to pay administrative, priority and general unsecured claims. Indeed, the Debtor estimates that in a liquidation, unsecured creditors will receive considerably less than 100% of their claims.

Third, the liquidation value of the Debtor's assets is far lower than their value to the Debtor as a going concern. For instance, the Debtor's accounts receivable are worth

12095203

- 42 -

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    less in a Chapter 7 in part because a bankruptcy trustee is unable to rely on personal

2    business relationships to persuade account debtors to pay their debts.  The Debtor has

3    estimated their liquidation value at only 50% of their value to the Debtor as a going

4    concern.  However, as noted above, even if the Debtor's assets could be sold at a value

5    high enough to pay creditors in full, the Plan calls for a 100% distribution to all Allowed

6    Claims.  Thus, by definition, the Debtor's Plan meets the "Best Interests Test."

7    Fourth, in a Chapter 7 case, as opposed to a Chapter 11 case (whether such Chapter

8    11 case contemplates liquidation or reorganization), a trustee is appointed and entitled to

9    compensation from the bankruptcy estate in an amount not more than 25% of the first

10    $5,000 of all monies disbursed, 10% on any amount between $5,000.01 and $50,000, 5%

11    on all amounts between $50,000.01 and $1,000,000, and 3% on all amounts in excess of

12    $1,000,000.  Such compensation will be paid ahead of distributions to general unsecured

13    claimants.  In addition, Chapter 7 trustees often hire accountants and attorneys who are

14    also compensated from the estate prior to distributions to general unsecured creditors.  So

15    to the extent there are unencumbered assets in a Chapter 7 case, they would be liquidated

16    to satisfy the administrative claims of the Chapter 7 estate rather than claims of creditors

17    in this Chapter 11 case.

18    Below is a demonstration, in balance sheet format, that all creditors and interest

19    holders will receive at least as much under the Plan as such creditor or interest holder

20    would receive under a Chapter 7 liquidation.

21

22

23

24    [Chart Begins on Next Page]

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

12095203

| Asset Description | Liquidation Value[6] |
|---|---|
| Cash | $4,349,533 |
| Less lien of Cathay Bank | ($6,500,000) |
| Net value to administrative, priority and general unsecured creditors | ($2,150,467) |
| | |
| Accounts Receivable | $5,447,276 |
| Less lien of Cathay Bank | ($2,150,467) |
| Net value to administrative, priority and general unsecured creditors | $3,296,809 |
| Inventory | $3,382,834 |
| | |
| Property, Plant & Equipment | $229,102 |
| | |
| Finished Goods | $100,375 |
| | |
| Trademarks, Patents, etc. | unknown |
| Less lien of Grand Pacific Trading Group | ($12,000) |
| Net value to administrative, priority and general unsecured creditors | unknown |
| | |
| Security Deposits and Retainers | $156,929 |
| | |
| Miscellaneous, Office Supplies and Furnishings, etc. | $32,000 |

[6] Liquidation values are estimates furnished by Brad Mattarocci, the Debtor's general manager. The actual amount of the accounts receivable was $10,894,552 as of September 30, 2010. However, Mr. Mattarocci estimates a 30-50% collection rate on accounts receivable in a liquidation; the highest estimate is used here. Historically, the Debtor's collection rate is greater than 95%, with over 90% of the Debtor's receivables collected in fewer than ninety (90) days. Mr. Mattarocci believes that if the Debtor were to cease doing business – as would occur in a liquidation – the rate of uncollectible receivables would increase from 5% to between 50% and 70%.

Likewise, the liquidation values for the inventory and finished goods are discounted by 50%. The Debtor estimated their value on a going concern basis (as of September 30, 2010) at $6,765,668 and $200,750, respectively. However, Mr. Mattarocci estimates their liquidation value to be at most 50% of their value to the Debtor, and probably even less. The higher figure is used here.

Finally, the liquidation value of the Debtor's property, plant and equipment was estimated at 229,102 as of September 30, 2010.

All other assets in this chart have the same going concern and liquidation values.

12095203

- 44 -

| Asset Description | Liquidation Value[6] |
|---|---|
| Net value to administrative, priority and general unsecured creditors | $7,004,068 |
| | |
|     Less Chapter 7 Trustee Fees | ($181,981) |
|     Less Estimated Chapter 7 Administrative Expense Claims | ($250,000) |
|     Less Estimated Chapter 11 Professional Fees in Excess of Retainers | ($500,000) |
|     Less Other Estimated Chapter 11 Administrative Expenses | ($200,000) |
|     Less Priority Tax Claims | ($100) |
|     Less Class 2 Priority Wage and Benefit Claims | ($12,074) |
| | |
| Net value to administrative, priority and general unsecured creditors | $6,041,894 |

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as they would receive under a Chapter 7 liquidation:

[Chart Begins on Next Page]

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

| Claimants | Estimated Allowed Amount | Payout under the Plan (%) | Payout under the Plan's Liquidation Contingency (%) | Payout under a Chapter 7 Liquidation (%) |
|---|---|---|---|---|
| Class 1A Secured Claim of Cathay Bank | $6,500,000 | 100% | 100% | 100% |
| Class 1B Secured Claim of Grand Pacific Trading Group | $12,000 | 100% | 100% | 100% |
| Class 1C Secured Claim of San Bernardino County Tax Collector | $2,806 | 100% | 100% | 100% |
| Chapter 7 Trustee Fees | $181,981 | n/a | n/a | 100% |
| Chapter 7 Administrative Expense Claims | $250,000 | n/a | n/a | 100% |
| Chapter 11 Professional Fees in Excess of Retainers | $500,000 | 100% | 100% | 100% |
| Other Chapter 11 Administrative Claimants | $200,000 | 100% | 100% | 100% |
| Priority Tax Claims | $100 | 100% | 100% | 100% |
| Class 2 Priority Wage and Benefit Claims | $12,074 | 100% | 100% | 100% |
| Class 3A General Unsecured Claims | $3,749,993 | 100% | 11.448% | 10.684% |
| Class 3B Unsecured Pending Litigation Claims | $638,925 | 100% | 11.448% | 10.684% |
| Class 3C Unsecured Texas Litigation Claims (Liquidation Contingency) | $39,057,691 | 100% | 11.448% | 10.684% |
| Class 3D Unsecured Guaranty Claims | $3,142,433 | 100% | 11.448% | 10.684% |
| Class 3E Unsecured Gardner Claim | $9,960,255 | 100% | 11.448% | 10.684% |
| Class 4 Equity Interests | n/a | 100% | 0% | 0% |

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

12095203

Chapter 11 Disclosure Statement

1    **C.    Feasibility.**

2        Another requirement for confirmation involves the feasibility of the Plan, which

3    means that confirmation of the Plan is not likely to be followed by the liquidation, or the

4    need for further financial reorganization, of the Debtor or any successor to the Debtor

5    under the Plan, unless such liquidation or reorganization is proposed in the Plan.

6        There are at least two important aspects of a feasibility analysis.  The first aspect

7    considers whether the Debtor will have enough cash on hand on the Effective Date of the

8    Plan to pay all the claims and expenses which are entitled to be paid on such date.  The

9    Debtor maintains that this aspect of feasibility is satisfied as illustrated below:

10

| | |
|---|---|
| Cash Debtor estimates it will have on the Effective Date | $4,340,000 |
| Cash needed to pay estimated allowed administrative claims on the Effective Date | <$700,000 |
| Cash needed to pay other Plan payments on the Effective Date | $2,906 |
| Cash needed on the Effective Date (subtotal) | <$702,906 |
| Balance: | >$3,637,094 |

18        The sources of the cash the Debtor will have on hand by the Effective Date, as

19    shown above, are:

20

| | |
|---|---|
| Estimated Cash in DIP Account | $4,340,000 |
| Borrowing | $0 |
| Cash from Sale of Stock | $0 |
| Total: | $4,340,000 |

25        The second aspect of feasibility considers whether the Debtor will most likely have

26    enough cash over the life of the Plan to make the required Plan payments.  The Debtor has

27    prepared detailed financial projections which establish that it will have sufficient revenue

28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

12095203

1    to make all plan payments, to pay all operating expenses, and to pay for all reasonably

2    anticipated capital improvements. These projections are attached hereto as Exhibit "E".

3    The Debtor's projections are based on over 22 years of industry experience and actual

4    business operations (including post-petition operations, which can be viewed in detail in

5    the Debtor's monthly financial statements which have been provided to the UST on a

6    regular basis.)

7         The Debtor's financial projections assume a modest growth rate in its business.

8    The Debtor believes these projections are conservative because its post-petition sales and

9    pending orders have grown substantially. During the twelve months ending September

10    30, 2010, the Debtor has already sold over $84 million in goods, has had gross profits of

11    over $16.6 million, and net pre-tax income of roughly $6.3 million.

12         The Debtor has already experienced a 10% increase in early placement orders from

13    its key customers as compared to 2009, which leads the Debtor to believe that 2011 will

14    see a sizeable increase in sales.

15         The company's business model has not changed and will continue to be the same

16    for the foreseeable future. The plan is to continue to diversify its customer base and to

17    increase market penetration at a steady and manageable pace. Baby Trend continues to

18    gain market share by gaining significant, additional product placement with key retail

19    customers such as Walmart, Target and Toys R Us.

20         The industry outlook for baby gear of the sort sold by Baby Trend remains strong

21    even in a weak economy. Government regulations for infant car seats and safety gear

22    provide a stable demand. Historically, the U.S. birth rate has remained fairly strong

23    despite economic conditions and, despite estimated fluctuations in such conditions, Baby

24    Trend expects the market for its products to remain stable.

25         With respect to the Class 3E claim of Robert P. Gardner, the Debtor estimates that

26    the funds necessary to pay that claim – assuming, *arguendo*, that the claim is allowed in

27    full – will come from the following sources:

28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

| | |
|---|---|
| Payment from Reorganized Debtor: | $1,140,430 |
| Payment from Denny Tsai: | $2,750,814 |
| Payment from Upward Pacific, LLC | $6,069,011 |

**YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.**

Please refer to the projections attached hereto as Exhibit "E" for a summary of the total distributions the Debtor proposes to make to creditors over the course of the Plan. As those financial projections demonstrate, the Debtor will have an average cash flow, after paying operating expenses, plan payments, other debts and post-confirmation taxes, sufficient to meet the payments required under the Plan. The final Plan payment is expected to be made on or before December 31, 2022.

The Debtor contends that its financial projections are reasonable. As shown by the Debtor's historical financial statements and its performance in Chapter 11, the Debtor's income and expenses are consistent with its model of sustainable growth. Indeed, the Debtor believes its financial projections are conservative and that it will be able to meet its operating requirements including the payment of all allowed claims pursuant to the Plan.

The Debtor's post-petition, net pre-tax operating profits have averaged $568,917 per month. Based on increased sales orders for 2011, the Debtor decided on an estimate of a 10% increase in sales for 2011, with conservative upticks of 4% per year thereafter. As set forth in Exhibit "E" hereto, the Debtor projects a net profit stream that will be sufficient to fund the payments required under the Plan, even under a "worst case scenario" with respect to the Class 3D Claims. Given the Debtor's historical performance since its turnaround efforts began, the Debtor believes these figures are realistic rather than optimistic.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

V.

## EFFECT OF CONFIRMATION OF THE PLAN

**A.** **Discharge.**

Except as otherwise provided in the Plan, the Confirmation Order or Section 1141 (d)(6) of the Bankruptcy Code: (1) on the Effective Date, the Debtor shall be deemed discharged and released to the fullest extent permitted by Section 1141 of the Bankruptcy Code from all Claims and Interests, including, but not limited to, demands, liabilities, Claims and Interests that arose before the Confirmation Date and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not: (A) a proof of Claim or proof of Interests based on such debt or Interest is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (B) a Claim or Interest based on such debt or Interest is allowed pursuant to Section 502 of the Bankruptcy Code; or (C) the holder of a Claim or Interest based on such debt or Interest has accepted the Plan, and (2) all Persons shall be precluded from asserting against the Reorganized Debtor, its successors, or its assets or property any other further Claims or Interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior the Confirmation Date. Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall act as a discharge of any and all Claims and against all debts and liabilities of the Debtor, as provided in Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment against each Debtor at any time obtained to the extent that it relates to a Claim discharged.

**B.** **Revesting of Property in the Debtor.**

Except as otherwise set forth herein, confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.** **Binding Effect.**

Confirmation of the Plan will bind the Debtor, its creditors, interest holders, their successors-in-interest, and any other person or entity acquiring property under the Plan, to the provisions of the Plan.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

12095203

**D.    Injunction.**

Upon confirmation of the Plan, all Persons that have held, currently hold or may hold a Claim or other debt or liability against the Debtor, are permanently enjoined from taking any of the following actions on account of any such Claims, debts or liabilities to the extent discharged as set forth in Section V.A above: (a) commencing or continuing in any manner any action or other proceeding against the Debtor; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor; (c) creating, perfecting or enforcing any lien or encumbrance against the Debtor; (d) asserting a setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages, from the willful violator.

**E.    Disposition of Unclaimed Funds.**

Any entity which fails to claim any Cash within sixty (60) days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan and the Reorganized Debtor shall be authorized to cancel any distribution that is not timely claimed. Pursuant to Section 347(b) of the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) shall revert to the Reorganized Debtor free of any restrictions under the Plan, the Bankruptcy Code, or the Bankruptcy Rules. Upon forfeiture, the claim of any Creditor with respect to such funds shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary, and such Creditors shall have no claim whatsoever against the Reorganized Debtor or any holder of an Allowed Claim to whom distributions are made by the Reorganized Debtor.

12095203

- 51 -

1    If the distribution to any holder of an Allowed Claim or Allowed Interest is

2    returned to the Disbursing Agent as undeliverable, no further distributions will be made to

3    such holder unless and until the Disbursing Agent is notified in writing of such holder's

4    then-current address.  Undeliverable distributions will remain in the possession of the

5    Disbursing Agent pursuant to the Plan until such time as a distribution becomes

6    deliverable.  Undeliverable cash will be held in trust in segregated bank accounts in the

7    name of the Disbursing Agent for the benefit of the potential claimants of such funds, and

8    will be accounted for separately.  The Disbursing Agent holding undeliverable cash shall

9    invest such cash in a manner consistent with the Reorganized Debtor's investment and

10    deposit deadlines.  Any distribution which is not claimed within sixty (60) days from the

11    date upon which a distribution is made shall be deemed property of the Reorganized

12    Debtor.

13

14    **F.    Cramdown.**

15    In the event that any class does not accept the Plan, the Debtor will seek

16    confirmation pursuant to the "cramdown" provisions of Code Section 1129(b).

17

18    **G.    Other Documents and Actions.**

19    The Debtor is authorized to execute such documents and take such other actions as

20    are necessary to effectuate the transactions provided for in the Plan.  In the event any

21    party in interest fails to prepare, deliver or execute a document required under this Plan, or

22    take any act required under this Plan, the Debtor is authorized to prepare, deliver, or

23    execute such document or take such act on that creditor's behalf.

24

25    **H.    Limitation on Liability.**

26    Neither the Debtor nor any of its employees, representatives, agents, attorneys or

27    other professionals will have or incur any liability to any person for any act taken or

28    omission made in connection with or related to formulating, implementing, confirming or

12095203

- 52 -

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1  consummating this Plan, the Disclosure Statement, or any contract, instrument, release or

2  other agreement or document created in connection with this Plan.

3

4  **I.    Modification of the Plan.**

5      The Debtor may modify the Plan at any time before confirmation. However, the

6  Court may require a new disclosure statement and/or revoting of the Plan. The Debtor

7  may also seek to modify the Plan at any time after confirmation only if (1) the Plan has

8  not been substantially consummated and (2) the Court authorizes the proposed

9  modifications after notice and a hearing.

10

11  **J.    Post-Confirmation Status Reports.**

12      Within 120 days of the entry of the order confirming the Plan, the Debtor will file a

13  status report with the Court explaining what progress has been made toward

14  consummation of the confirmed Plan. The status report shall be served on the UST and

15  those parties who have requested special notice. Further status reports shall be filed every

16  180 days and served on the same entities until the entry of a final decree closing the case.

17

18  **K.    Post-Confirmation Conversion / Dismissal.**

19      A creditor or party in interest may bring a motion to convert or dismiss the case

20  under Code Section 1112(b), after the Plan is confirmed, if there is a default in performing

21  the Plan. If the Court orders the case converted to Chapter 7 after the Plan is confirmed,

22  then all property that had been property of the Chapter 11 estate, and that has not been

23  disbursed pursuant to the Plan, will revest in the Chapter 7 estate. The automatic stay will

24  be reimposed upon any revested property.

25      The order confirming the Plan may also be revoked under very limited

26  circumstances. The Court may revoke the order if the order of confirmation was procured

27  by fraud and if a party in interest brings an adversary proceeding to revoke confirmation

28  within 180 days after the entry of the order of confirmation.

12095203

- 53 -

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    **L.    Final Decree.**

2        Once the estate has been fully administered as defined in Bankruptcy Rule 3022, or

3    at such other time as may be appropriate under applicable law, the Debtor, or such other

4    party as the Court shall designate in the Plan Confirmation Order, shall file a motion with

5    the Court to obtain a final decree to close the case.

6

7    Dated: October 1 , 2010                    BABY TREND, INC.

8

9                                               By: _____

10                                              Its: _____

11

12

13    Dated: October  , 2010                    Respectfully submitted,

14                                              SNELL & WILMER L.L.P.

15

16                                              By: _____

17                                                  Michael B. Reynolds
                                                    Attorneys for Baby Trend, Inc.,
18                                                  Debtor and Debtor-in-Possession

19

20

21

22

23

24

25

26

27

28